UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

CHARLES DUFF,

        Plaintiff,

v.                        Case No. 8:09-cv-374-T-33TGW

MANATEE COUNTY SHERIFF BRAD STEUB
(Defendant "C") and CHIEF HEALTH OFFICIAL
AT THE MANATEE COUNTY JAIL (Defendant "D"),

        Defendants.
_____

## O R D E R

The Court has for its consideration the pro se prisoner Plaintiff's civil rights complaint filed against Defendants pursuant to 42 U.S.C. § 1983. The Court has undertaken a preliminary screening of Plaintiff's complaint in accord with 28 U.S.C. § 1915A. After doing so, the Court concludes that the complaint is due to be dismissed for failure to state a claim upon which relief may be granted because it is apparent from the face of the complaint that Plaintiff did not suffer deliberate indifference to his serious medical needs while he was incarcerated at the Manatee County Jail.

Factual Background

In his complaint, Plaintiff Duff contends:

      This medical problem begins in the Manatee County Jail, where Plaintiff became incarcerated on Oct. 10, 2006. Plaintiff had ongoing urinary problems up until the end of Feb. 2007. At the time Plaintiff received an emergency catheterization [sic] , and was lodged in the infirmary. The next day, Plaintiff was transported to Manatee Mem. Hospital where he underwent a CT Scan and an ultrasound.

      From this date until the last of March, 2007, Plaintiff was transported to a urologist, Dr. Bilak, of Bradenton, once to his office, and twice to his clinic in Sarasota. On one trip to Sarasota, the Plaintiff was given a cystoscopy and colonoscopy. Dr. Bilak advised Plaintiff he would require surgery, a Laser TURP (Transuretral [sic] Resection of the Prostate) because of an enlarged Prostate. He also prescribed Proscar and Flo-max.

      On April 9th after being catherized [sic] for 8 weeks, Plaintiff went to court for sentencing with the catheter bag in tow, and was given 5 yrs. DOC.

      On of about April 11th, the catheter was removed, Plaintiff was returned to General Population, and was told, "You're DOC's problem now."

      On May 2nd Plaintiff was transported to CFRC in Orlando and as of this date, has not had surgery or any of the medication prescribed.[1]

      By not placing Plaintiff on a "Medical Hold," defendants violated Plaintiff's rights under the 8th Amendment. Surgery could then have been performed and Plaintiff would not have had to endure the pain and suffering for the past 24 months.

      A civil complaint is also being filed at this time for this same medical problem against Fl. DOC, and other defendants.

      Because Plaintiff is now, and has been incarcerated in DOC since Defendant "C" transported him in [sic] May 2, 2007 to DOC, Defendants are unable to help Plaintiff medically.

      However, because of the pain and suffering Plaintiff has had to endure due to the Defendants [sic] indifference to Plaintiffs [sic] serious medical

---

[1] In his Motion for leave to file Plaintiff's personal declaration (Doc. No. 7), Plaintiff states that he has an "upcoming scheduled surgery."

need, Plaintiff asks for compensatory damages in the amount of $50,000 each, for Defendant "C" and "D."

Also, because of Defendants [sic] reckless and callous indifference to the Plaintiff's rights, Plaintiff asks for punitive damages in the amount of $100,000 each, for Defendants "C" and "D."

Discussion

Deliberate indifference to a prisoner's serious medical needs violates the Eighth Amendment. *Estelle v. Gamble*, 429 U.S. 97 (1976). But "[m]edical treatment violates the [E]ighth [A]mendment[2] only when it is so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness. Mere incidents of negligence or malpractice do not rise to the level of constitutional violations." *Harris v. Thigpen*, 941 F.2d 1495, 1505 (11th Cir.1991) (internal quotation omitted). When an inmate receives adequate medical care but desires "different modes of treatment, the care the jail provided [does] not amount to deliberate indifference." *Hamm v. DeKalb County*, 774 F.2d 1567, 1575 (11th Cir.1985).

Plaintiff Duff's Allegations Against Sheriff Brad Steub

Plaintiff Duff does not mention the Manatee County Sheriff Brad Steub in his complaint, except to name him as a Defendant. He does not allege what, if any actions, the sheriff took in his individual or official capacity that constitute deliberate indifference to Plaintiff's serious medical needs. It appears that Plaintiff is attempting to hold Sheriff Brad Steub liable under the theory of *respondeat superior*. *Respondeat superior*, however, is not actionable in 42 U.S.C. §1983 complaints. The Eleventh Circuit has stated that:

---

[2] The Fourteenth Amendment applies the same standard to pre-trial detainees, the status which Duff held at the time of the alleged deliberate indifference to his medical needs in the Manatee County Jail. See *Lancaster v. Monroe County*, 116 F.3d 1419, 1425 (11th Cir.1997).

> Like municipalities, supervisors cannot be held liable for the acts of employees solely on the basis of *respondeat superior*. *McLaughlin v. City of LaGrange*, 662 F.2d 1385, 1388 (11th Cir. 1981), *cert. denied*, 456 U.S. 979, 102 S.Ct. 2249, 72 L.Ed.2d 856 (1982). Supervisory liability is not limited, however, to those incidents in which the supervisor personally participates in the deprivation. *Goodson v. City of Atlanta*, 763 F.2d 1381, 1389 (11th Cir. 1985); *Wilson v. Attaway*, 757 F.2d 1227, 1241 (11th Cir. 1985); *Sims v. Adams*, 537 F.2d 829, 831 (5th Cir. 1976). There must be a causal connection between the actions of the supervisory official and the alleged deprivation. *Wilson*, 757 F.2d at 1241; *Henzel v. Gerstein*, 608 F.2d 654, 658 (5th Cir. 1979). This causal connection can be established when a history of widespread abuse puts the responsible supervisor on notice of the need for improved training or supervision, and the official fails to take corrective action. *Wilson*, 757 F.2d at 1241; *Sims*, 537 F.2d at 832.

*Fundiller v. City of Cooper City*, 777 F.2d 1436, 1443 (11th Cir.1985). *See Goebert v. Lee County*, 510 F.3d 1312 (11th Cir. 2007) in which the Eleventh Circuit stated:

> The Sheriff had no direct contact with Goebert. The basis for her claim against him is his office's supervisory responsibilities over the jail. We do not recognize vicarious liability, including *respondeat superior*, in § 1983 actions. *Cottone*, 326 F.3d at 1360. In order to establish that a defendant committed a constitutional violation in his supervisory capacity, a plaintiff must show that the defendant instituted a "custom or policy [that] result[s] in deliberate indifference to constitutional rights or ... directed [his] subordinates to act unlawfully or knew that the subordinates would act unlawfully and failed to stop them from doing so." *West v. Tillman*, 496 F.3d 1321, 1328-29 (11th Cir.2007) (per curiam) (first and second alterations in original) (internal quotation marks omitted) (quoting *Cottone*, 326 F.3d at 1360).

> As we have explained, "[a] policy is a decision that is officially adopted by the municipality, or created by an official of such rank that he or she could be said to be acting on behalf of the municipality." *Sewell v. Town of Lake Hamilton*, 117 F.3d 488, 489 (11th Cir. 1997). A custom is an unwritten practice that is applied consistently enough to have the same effect as a policy with the force of law. *City of St. Louis v. Praprotnik*, 485 U.S. 112, 127, 108 S.Ct. 915, 926, 99 L.Ed.2d 107 (1988). Demonstrating a policy or custom requires "show[ing] a persistent and wide-spread practice." *Depew v. City of St. Mary's, Ga.*, 787 F.2d 1496, 1499 (11th Cir.1986).

> Goebert's official capacity claim against Sheriff Scott relies on the Lee County Jail's policy of not permitting inmates to lie down during the daytime without a pass coupled with the staff's failure to issue such passes when medically necessary. The policy of not permitting inmates to lie down at their

leisure during the daytime is a reasonable one. It certainly is not facially unconstitutional. Goebert's claim, in effect, is that this facially constitutional policy was implemented in an unconstitutional manner-one that ignored medical needs.

Our decisions establish that supervisory liability for deliberate indifference based on the implementation of a facially constitutional policy requires the plaintiff to show that the defendant had actual or constructive notice of a flagrant, persistent pattern of violations. *See West*, 496 F.3d at 1329 (" 'The deprivations that constitute widespread abuse sufficient to notify the supervising official must be obvious, flagrant, rampant and of continued duration, rather than isolated occurrences.' " (quoting *Hartley v. Parnell*, 193 F.3d 1263, 1269 (11th Cir.1999)); *Mathews v. Crosby*, 480 F.3d 1265, 1271 (11th Cir.), *petition for cert. filed*, 76 U.S.L.W. 3050 (U.S. Jul. 23, 2007) (No. 07-86) (reviewing the facts in the light most favorable to the plaintiff to determine "whether [a prison warden] was put on notice by a history of widespread abuse at [the prison], or whether he had established customs or policies resulting in deliberate indifference to a prisoner's constitutional rights"); *Marsh*, 268 F.3d at 1037 ("Unless a policymaker knows of the need [to remedy an unconstitutional condition], no liability can arise from failure [to do so]."). As the Supreme Court has stated, " 'deliberate indifference' is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action." *Bd. of County Comm'rs v. Brown*, 520 U.S. 397, 410, 117 S.Ct. 1382, 1391, 137 L.Ed.2d 626 (1997).

Goebert has not shown that the Sheriff had actual knowledge that the lie-in pass policy was being implemented in a way that ignored medical needs. There is no evidence that he knew that, if it was a fact. Nor has Goebert shown that the misapplication of the policy was so widespread that we can attribute constructive knowledge to the Sheriff. In fact, she has not shown that any other inmate had ever been denied a lie-in pass when needed for medical reasons. As a result, she has "failed to meet the 'extremely rigorous' standard for supervisory liability." *West*, 496 F.3d at 1329 (quoting *Cottone*, 326 F.3d at 1360). The district court correctly granted summary judgment to Sheriff Scott.

510 F.3d at 1331, 1332. See *also, Bozeman v. Orum*, 199 F. Supp 2d 1216 (M.D. Ala. 2002). Duff has not met the standard for holding Defendant Sheriff Brad Steub under the theory of *respondeat superior.*

Plaintiff Duff's Allegations Against the Chief Medical Officer at the Jail

Plaintiff has not shown that the Chief Medical Officer, or anyone else at the jail, was

5

deliberately indifferent to his serious medical needs. Plaintiff claims that he entered the Manatee County Jail in October 2006 and that he had an ongoing urinary problem. He does not allege that he requested and was refused medical treatment during the period between October 2006 and the end of February 2007 when he was received an emergency "catheterization" and was housed in the infirmary. Plaintiff states that he was transported to Manatee Memorial Hospital the next day where he underwent a CAT scan and an ultrasound.

He further alleges that from the end of February until the last of March 2007, Plaintiff was transported for medical visits to Bradenton urologist, Dr. Bilak, (once to his office, and twice to his clinic in Sarasota). Plaintiff contends that on one trip to Sarasota, he was given a cystoscopy and colonoscopy, and that Dr. Bilak advised Plaintiff he would require surgery, a Laser TURP "(Transuretral [sic] Resection of the Prostate)" because of an enlarged prostate gland. Dr. Bilak also prescribed Proscar and Flo-max which Plaintiff was provided, and which he took for his problem.

Plaintiff does not allege that Dr. Bilak told him the surgery was an immediate medical emergency, and does not allege that he had an immediate medical emergency necessitating surgery just before or just after he was transferred to the Department of Corrections.

Conclusion

Plaintiff cannot demonstrate that the Defendants were deliberately indifferent to his serious medical needs. He was provided tests, treatment, and medications while he was incarcerated at the Manatee County Jail. He was transported to the hospital and to the urologist for special medical care. Plaintiff has provided no support for his claim that the

Defendants should have placed him on "medical hold" and provided the surgery Dr. Bilak described.

Accordingly, the Court orders

That Plaintiff's complaint is dismissed. The Clerk is directed to terminate all pending motions, to enter judgment against Plaintiff, and to close this case.

ORDERED at Tampa, Florida, on March 6, 2009.

_____
VIRGINIA M. HERNANDEZ COVINGTON
UNITED STATES DISTRICT JUDGE

Charles Duff